UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DOAA S. MADI and HMA, INC. | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 3:16-cv-30064-KAR |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant | ) |

<u>MEMORANDUM OF DECISION AND ORDER REGARDING DEFENDANT'S MOTION
TO AFFIRM THE DECISION OF THE USDA</u>
(Dkt. No. 47)

ROBERTSON, U.S.M.J.

I. <u>INTRODUCTION</u>

Plaintiffs Doaa S. Madi ("Ms. Madi) and HMA, Inc. ("HMA") ("Plaintiffs"), owned and operated a grocery store conducting business as El Safi at 532 Main Street in West Springfield, Massachusetts. Plaintiffs commenced this action, pursuant to 7 U.S.C. § 2023(a)(13) and the Administrative Procedures Act, 5 U.S.C. § 702, seeking judicial review of the denial of the store's application to participate in the Supplemental Nutrition Program ("SNAP"). The Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA") ("Defendant" or "the government") denied Plaintiffs' application to participate in SNAP based on its determination that Plaintiffs' application was an attempt to circumvent El Safi's permanent disqualification from SNAP participation when it was owned and operated by Ms. Madi's husband, Ashraf M. Galal ("Mr. Galal"). Plaintiffs claim that (1) denial of the application was unsupported by a preponderance of the evidence and should be set aside pursuant to 7 U.S.C. §

1

2023(a)(13), and (2) the imposition of a three-year bar from applying to participate in SNAP was arbitrary and capricious. The government moves for summary judgment dismissing the complaint in its entirety (Dkt. No. 47). Plaintiffs object (Dkt. No. 52). The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons that follow, the court grants Defendant's motion for summary judgment.

II. FACTUAL BACKGROUND

A. Statutes and Regulations

An overview of the applicable statutory and regulatory scheme provides a framework for the court's decision. SNAP was established under the Food Stamp Act of 1964, 7 U.S.C. §§ 2011-2036, and is operated by the FNS. *See Rockland Convenience Store v. United States*, Civil No. 10-260-LM, 2011 WL 5120410, at *1 (D.N.H. Oct. 27, 2011). "Congress established SNAP 'to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households.'" *Irobe v. U.S. Dep't of Agric.,* 890 F.3d 371, 375 (1st Cir. 2018) (quoting 7 U.S.C. § 2011). "SNAP benefits are provided to eligible households by means of electronic benefit transfer ('EBT') cards." *Rockland Convenience Store*, 2011 WL 5120410, at *1; *see also* 7 U.S.C. §§ 2012(i), 2016(a). SNAP "utilizes plastic cards which are 'swiped' at the cash register like a credit [or debit] card." *McClain's Mkt. v. United States*, 411 F. Supp. 2d 772, 773 n.2 (N.D. Ohio 2005). After a SNAP participant purchases eligible food at an authorized store by using his or her EBT card, funds are electronically transferred from the purchaser's account to the store's bank account. *See Irobe*, 890 F.3d at 375.

"Trafficking in SNAP benefits is unlawful." *Id.* (citing 7 C.F.R. § 278.2(a)). *See* 7 U.S.C. § 2021(a)(1), (b)(3)(B). "[A] store engages in trafficking by accepting SNAP benefits in exchange for cash or other proscribed items." *Irobe*, 890 F.3d at 375 (citing 7 C.F.R. § 271.2).

2

"For instance, a store traffics when it 'accept[s] food stamps for sales that never took place,' allowing its customers to receive 'cash rather than merchandise'" *Id.* (quoting *Idias v. United States*, 359 F.3d 695, 698-99 (4th Cir. 2004)).

If the retailer operations division of the FNS determines that a store has engaged in trafficking, the store is permitted to pursue an appeal to an administrative review officer ("ARO"). *See* 7 U.S.C. § 2023(a)(3); 7 C.F.R. §§ 279.1(a)(2), 279.5. An ARO's final determination that the store engaged in trafficking permits the USDA to "impose a lifetime program-participation ban on 'the first occasion or any subsequent occasion' of trafficking." *Irobe*, 890 F.3d at 376 (quoting 7 U.S.C. §§ 2021(b)(3)(B), 2023(a)(5); 7 C.F.R. §§ 278.6, 279.5). In certain circumstances, the agency may impose civil monetary penalties instead of a ban. *See* 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6. The store has the right to appeal the agency's final decision to a federal district court. *See* 7 U.S.C. § 2023(a)(13), (15).

In order to participate in SNAP, a store is required to submit an application to the FNS. *See* 7 C.F.R. § 278.1(a). The FNS has a particular policy for review of applications from retailers designated as being high risk "due to *any* previous permanent disqualification occurring at [the retailer's] location or in a nearby location" (Dkt. No. 48-1 at 6). A designated high risk store's applicant is required to submit additional information to "ensure there are no ties to the previously disqualified owner's name, home, address, phone number, etc." (*id.*). The supplemental information includes personal tax returns for the most recent filing year and "[a] notarized affidavit from the new owner(s) stating that they are not connected with the previously disqualified owner(s)" (*id.*). If the FNS determines that there is evidence that a store is attempting to "circumvent a period of disqualification," it must deny the application on the grounds that the store "lack[s] the necessary business integrity and reputation to further the

3

purposes of the [SNAP]." 7 C.F.R. § 278.1(k)(3)(iii). A retailer whose application is denied for this reason cannot be authorized to participate in SNAP for three years from the effective date of the denial. *Id.* The store can request review of the denial of its application by an ARO. *See* 7 C.F.R. §§ 279.1(a)(1), 279.5. The ARO's decision to sustain the denial may be appealed to a federal district court. *See* 7 U.S.C. § 2023(a)(13), (15).

B. Facts

When Plaintiffs applied to participate in SNAP, Ms. Madi was the sole owner of HMA, which operated El Safi at 532 Main Street in West Springfield (Administrative Record "A.R." at 3). Previously, Mr. Galal, Ms. Madi's husband, owned and operated the El Safi Supermarket at the same location (*id.* at 818). On April 1, 2014, the FNS determined that El Safi had trafficked in SNAP benefits (*id.* at 819, 835-36). Consequently, Mr. Galal and El Safi were permanently disqualified from participating in the program (*id.* at 18). Mr. Galal requested administrative review of the FNS's decision (*id.* at 818-36). After review, the ARO sustained the disqualification and penalty (*id.*). Mr. Galal did not appeal the ARO's decision to a federal district court (*id.* at 72, 836).

Less than one year later, on April 3, 2015, Ms. Madi incorporated HMA (*id.* at 1). Plaintiffs continued to operate the store under the same name, "El Safi", at the same location in West Springfield (*id.* at 22, 72). They submitted an application to the FNS for authorization for El Safi to participate in SNAP on April 21, 2015 (*id.* at 1-8). The FNS requested additional information because the store was operating at a location where there had been a SNAP violation (*id.* at 15-17). Ms. Madi provided an affidavit indicating that "[o]ne or more owners or managers of this firm are related by birth or marriage to an owner or manager of a firm that is or has been disqualified from SNAP or WIC" (*id.* at 17). She reported that Mr. Galal was her

4

husband (*id.* at 18). The joint tax return of Mr. Galal and Ms. Madi for the year of 2014 showed that their only income was derived from the operation of El Safi (*id.* at 51, 53).

   III.   PROCEDURAL HISTORY

On August 14, 2015, the FNS's operations division notified Plaintiffs that it was denying their application to participate as an authorized retail food store in SNAP because the application constituted an attempt to avoid or circumvent the permanent disqualification of Ms. Madi's husband, Mr. Galal (*id.* at 19). The denial was for three years (*id.*). *See* 7 C.F.R. § 278.1(k)(3)(iii).

Plaintiffs submitted a timely request for administrative review, postmarked September 17, 2015, with accompanying documents (*id*. at 24). Ms. Madi claimed that she was not attempting to avoid her husband's disqualification from participating in SNAP (*id.* at 22). Her letter stated, in part; "After my husband signed over the store to me I took over and I am running the store completely. As a new start for this business so I can keep supporting our family" (*id.*). Ms. Madi indicated that there was "no physical evidence" that her husband trafficked in SNAP benefits (*id.*). She provided credit card statements from the store for the previous thirteen months to support this contention (*id.*). Finally, she stated that she was the sole owner who was attempting to run the store in a more efficient manner (*id.* at 23). By a September 25, 2015 letter, the ARO notified Plaintiffs that she had received their request for administrative review (*id.* at 75). The UPS receipt for delivery of the letter, which was addressed to HMA at 532 Main Street in West Springfield, Massachusetts, was signed by "GALLAL" [sic] (*id.* at 77). Plaintiffs did not submit additional information (*id.* at 78-141).

The ARO determined that the store lacked the necessary business integrity to further the purposes of SNAP because it was attempting to circumvent El Safi's and Mr. Galal's previous

5

disqualification (*id*. at 147-153). *See* 7 U.S.C. § 2023(a). The ARO sustained the operation division's decision based on the evidence that Ms. Madi was married to the previous owner of El Safi who trafficked in benefits and who was permanently disqualified from participating in SNAP on June 25, 2014 (*id.*). The ARO further found that Ms. Madi executed the articles of organization for HMA, Inc. nine months after her husband was disqualified, HMA was located at the same address as Ms. Madi's husband's store, and the 2014 joint income tax returns established "a spousal relationship between [Ms. Madi] (the current store owner) and [Mr. Galal] (the previously disqualified store owner) . . . ." (*id.* at 150). In addition, Ms. Madi's driver's license and her joint tax return showed that she and her husband resided at the same address (*id.*).

Plaintiffs' complaint for review of the ARO's decision was entered in this court on April 8, 2016. *See* 7 U.S.C. § 2023(a)(13)(15); 7 C.F.R. § 279.7. The government answered, and has moved for summary judgment (Dkt. No. 47). Plaintiffs objected (Dkt. No. 52). The court heard the parties' arguments on March 26, 2018 (Dkt No. 54).

    IV.    <u>ANALYSIS</u>

        A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "A fact is 'material' only if it 'possess[es] the "capacity to sway the outcome of the litigation under the applicable law."'" *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008) (quoting *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997)). "The object of summary judgment is to 'pierce the boilerplate of the

pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *Dávila v. Corporación de P.R. para la Diffusión Pública*, 498 F.3d 9, 12 (1st Cir. 2007) (quoting *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 7 (1st Cir. 2004)). "[T]he court's task is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Noonan v. Staples, Inc*., 556 F.3d 20, 25 (1st Cir. 2009) (quoting *Asociación de Periodistas de P.R. v. Mueller*, 529 F.3d 52, 55 (1st Cir. 2008)).

"Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion,'" *Meuser v. Fed. Express Corp*., 564 F.3d 507, 515 (1st Cir. 2009) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), and "cannot rest on 'conclusory allegations, improbable inferences, [or] unsupported speculation.'" *Meuser*, 564 F.3d at 515 (alteration in original) (quoting *Welch v. Ciampa*, 542 F.3d 927, 935 (1st Cir. 2008)). "When ruling on a party's motion for summary judgment, a trial court 'constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor.'" *Rockland Convenience Store*, 2011 WL 5120410, at *1 (alterations in original) (quoting *Meuser*, 564 F.3d at 515; citing *Rochester Ford Sales, Inc. v. Ford Motor Co.,* 287 F.3d 32, 38 (1st Cir. 2002)). An appeal of a ruling by the USDA is a proper subject for summary judgment. *See Kassem v. United States*, No. 02-CV-0546E(F), 2003 WL 21382906, at *2 (W.D.N.Y. Apr. 15, 2003).

B. <u>Standard of Review of the Administrative Decision</u>

"Under the enforcement scheme envisioned by Congress [for violations of the Food Stamp Act], and as interpreted by [the First Circuit], the [FNS] determines when violations have occurred and chooses a sanction which appropriately fulfills the policies of the Food Stamp Act." *Broad St. Food Mkt., Inc. v. United States*, 720 F.2d 217, 220 (1st Cir. 1983). "The First Circuit

7

has adopted a bifurcated standard of review in food stamp cases, applying a de novo standard to the determination of the violation and a limited administrative review standard to the sanction imposed." *Objio v. United States*, 113 F. Supp. 2d 204, 208 (D. Mass. 2000) (citing *Broad St. Food Mkt., Inc.,* 720 F.2d at 220; *Collazo v. United States,* 668 F.2d 60, 65 (1st Cir. 1981); *Kulkin v. Bergland*, 626 F.2d 181, 184 (1st Cir. 1980)). *See Irobe*, 890 F.3d at 377. The First Circuit recently held that in an action commenced pursuant to 7 U.S.C. § 2023(a)(13), the plaintiff has the burden of proving by a preponderance of the evidence that the USDA's decision was invalid. *See Irobe,* 893 F.3d at 374.

"A reviewing court may disturb the agency's choice of a sanction only if it finds that choice to be 'arbitrary, capricious, or contrary to law'" *Id.* (quoting *Mass. Dep't of Pub. Welfare v. Sec'y of Agric.,* 984 F.2d 514, 520 (1st Cir. 1993)).

> This holding is in accordance with the fundamental principles proclaimed by the Supreme Court "that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving statutory policy, the relation of the remedy to policy is peculiarly a matter for administrative competence" and that "[the FNS's] choice of sanction is not to be overturned unless [the reviewing court] might find it is 'unwarranted in law . . . or without justification in fact.'"

*Objio*, 113 F. Supp. 2d at 208 (quoting *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185-86 (1973)).

The operative statute, 7 U.S.C. § 2023(a)(13), permits Plaintiffs to seek judicial review of (1) the FNS's determination that the firm lacked the necessary business integrity to further the purpose of the program due to an attempt to circumvent a previous period of disqualification, and (2) the sanction of the denial of participation in SNAP for three years. Plaintiffs' distinct claims will be discussed in turn.

    C.    <u>The FNS's Denial of Plaintiffs' Application to Participate in SNAP</u>

The government argues that the FNS correctly denied Plaintiffs' SNAP application because Plaintiffs have failed to "establish that Mr. Galal is somehow financially independent of any prospective financial gain Ms. Madi would receive by participating in SNAP" (Dkt. No. 48 at 14). Plaintiffs rejoin that marriage alone is an insufficient basis on which to determine that they attempted to circumvent Mr. Galal's prior disqualification from participating in SNAP in view of the fact that Ms. Madi did not participate with her husband in El Safi's operation (Dkt. No. 52 at 3). Considered in the abstract, the court accepts that a spousal relationship alone is an insufficient basis for a finding of an attempt to circumvent a prior disqualification. Based on the record here, however, the government's argument is persuasive.

As noted above, the FNS's finding of a violation of the law is subject to a de novo review by the district court. *See Objio*, 113 F. Supp. 2d at 208; 7 U.S.C. § 2023(a)(15). "*De novo* review means that the [c]ourt 'must make its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously appraised in the administrative proceedings.'" *Bamuqabel v. United States*, No. 4:11CV250 RWS, 2012 WL 3065525, at *4 (E.D. Mo. July 27, 2012) (quoting *Sims v. U.S. Dep't of Agric. Food & Nutrition Serv.,* 860 F.2d 858, 862 (8th Cir.1988)) (internal quotation marks and citation omitted).

"When deciding whether a store is eligible to participate in SNAP, the FNS is governed by 7 U.S.C. § 2018, which provides that the FNS shall consider 'the business integrity and reputation of the applicant.'" *United States v. J & K Mkt. Centerville, LLC,* 679 F.3d 709, 712 (8th Cir. 2012) (quoting 7 U.S.C. § 2018(a)(1)). "The factors for admission to SNAP are set out in greater detail by section 2018's implementing regulations, which are found in 7 C.F.R. § 278.1." *Id.* The regulations direct the FNS to deny the application of a firm if there is evidence

9

that it is attempting to circumvent a period of disqualification. 7 C.F.R. § 278.1(b)(3)(iii), (k)(3)(iii). Applications of "[f]irms for which evidence exists of an attempt to circumvent a period of disqualification . . . shall be denied for a period of three years from the effective date of denial." 7 C.F.R. § 278.1(k)(3)(iii). "FNS permits new owners of a firm which has been disqualified to participate in the food stamp program as long as the 'transfer of ownership is bona fide.'" *Bamuqabel,* 2012 WL 3065525, at *4 (quoting FNS Handbook 318, Section 320, part C). "To demonstrate a bona fide transfer of ownership, the applicant must provide a statement that the previous owner and anyone else involved in the prior violations have no financial interest in, and will not work for, the new firm." *Id.*

The undisputed facts establish that Plaintiffs were attempting to circumvent El Safi's prior disqualification from participating in SNAP.[1] At the time of Plaintiffs' application and at the time of Mr. Galal's ownership of the El Safi Supermarket located at 532 Main Street in West Springfield, Ms. Madi and Mr. Galal were married and resided together (A.R. at 22-23, 51-71, 150). The FNS determined that Mr. Galal trafficked in SNAP benefits at El Safi, and permanently disqualified him from participating in SNAP (*id.* at 835-36). The agency's decision became final on or about October 4, 2014, and neither Mr. Galal nor El Safi pursued an appeal to the district court (*id.* at 151, 836). Less than one year later, in April 2015, Ms. Madi, the sole corporate officer of HMA, began operating the El Safi market at the same location (A.R. at 1, 9, 90). On September 25, 2015, the FNS denied Plaintiffs' SNAP application and sent a letter to HMA at 532 Main Street, West Springfield, Massachusetts (A.R. at 75-76). "GALLAL" [sic]

---

[1] The parties agreed to waive the LR 56.1 requirement of filing statements of undisputed facts "with the understanding that a memorandum citing relevant pages in the administrative record [would] be included" (Dkt. No. 43).

signed the delivery receipt for the letter (*id.* at 77). Plaintiffs do not dispute that Mr. Galal was present at the market and signed the delivery receipt.

Plaintiffs, who bear the burden of proof, have failed to submit evidence to show that Mr. Galal was not economically benefitting from Ms. Madi's ownership of the store. This proof is required to demonstrate that Plaintiffs were not attempting to circumvent the store's prior disqualification from SNAP. *See Bamuqabel,* 2012 WL 3065525, at *4. Mr. Galal's and Ms. Madi's 2014 joint tax return indicated that the profits of El Safi were their only source of income (A.R. at 51, 53). They did not submit evidence from the years after 2014 when Ms. Madi operated the business to demonstrate that this was no longer the case. Put another way, there is no evidence that Mr. Galal had an independent source of income. Indeed, in Ms. Madi's letter to the ARO, she indicated that she was "running the business" so she could "keep supporting our family" (*id.* at 22). So far as appears from the record, Ms. Madi's husband, the prior owner of El Safi, is part of her family. If El Safi was permitted to participate in SNAP after Mr. Galal's disqualification, he would continue to receive financial benefits from the store's participation in the program. Such a result would render meaningless the sanction for trafficking in SNAP benefits that was imposed on him.

Plaintiffs' reliance on *Warren v. United States*, 932 F.2d 582 (6th Cir. 1991), in support of their position is misplaced because *Warren* is factually distinguishable. In that case, Lee Warren, Sr. ("Lee, Sr.") operated a grocery store which was disqualified from receiving Food Stamp benefits due to trafficking violations in 1986. *Id.* at 584. Prior to that date, Lee, Sr. had placed the business in the name of his son, Lee Warren, Jr. ("Lee, Jr.") and put Lee, Jr.'s name on the food stamp license. *Id.* Lee, Jr. also signed the store's tax returns. *Id.* There was no other evidence that Lee, Jr. participated in the business. *Id.* In fact, the evidence showed, "Lee Jr. ran

11

a rental car park and never exercised any attributes of ownership over the store or took any profit from the store." *Id.* The plaintiff, Lee, Jr.'s wife, purchased the store after Lee, Sr.'s death. *Id.* The FNS denied her application to participate in the food stamp program finding that she was attempting to circumvent the disqualification of her husband, the prior owner. *Id.* The district court agreed. *Id.* at 585. In reversing the district court's decision, the Sixth Circuit determined that familial relationships, alone, were "insufficient to prove an attempt to circumvent the prior disqualification . . . ." *Id.* at 587. Because Lee, Jr. never enjoyed any economic benefit from owning the store during the time that his father operated it and violated the law proscribing trafficking, the court concluded that allowing Lee, Jr.'s wife to participate in the food stamp program would not circumvent the prior penalty. *Id.* In the instant case, on the other hand, Mr. Galal's financial benefit from store ownership would continue if his wife was permitted to participate in SNAP.

The undisputed facts, when viewed in the light most favorable to the Plaintiffs, demonstrate that the FNS's decision -- that Plaintiffs' application was an attempt to circumvent a previous disqualification -- was valid. Accordingly, the government is entitled to summary judgment. *See Bamuqabel*, 2012 WL 3065525, at *4-6.

D.   The Three-year Disqualification

Plaintiffs next contend that the penalty of a three-year bar from participating in SNAP is arbitrary and capricious (Dkt. No. 52 at 3-4). The government disagrees and asserts that the sanction was required by the regulations and, therefore, was appropriate (Dkt. No. 48 at 16-17). The government's argument is correct as a matter of law.

"An agency's action is arbitrary and capricious if it was 'unwarranted in law or without justification in fact.'" *Nagi v. U.S. Dep't of Agric.,* No. 96 CIV. 6034(DC), 1997 WL 252034, at

*2 (S.D.N.Y. May 14, 1997) (quoting *Willy's Grocery,* 656 F.2d at 26). As discussed earlier, the FNS denied Plaintiffs' SNAP application on the ground that they "lack[ed] the necessary business integrity and reputation to further the purposes of the program" based on their "attempt to circumvent a period of disqualification." 7 C.F.R. § 278.1(b)(3)(iii), (k)(3)(iii). The regulation mandates the denial of a SNAP application "for a period of three years from the effective date of denial" in these circumstances. 7 C.F.R. § 278.1(k)(3)(iii). [2]

Because the FNS followed the regulations, it did not act arbitrarily and capriciously in imposing the three-year penalty. *See Bamuqabel,* 2012 WL 3065525, at *6 (where plaintiffs were found to have attempted to circumvent a prior disqualification from the food stamp program, the USDA's "decision to deny plaintiff's participation in the food stamp program for three years was justified and not arbitrary or capricious as a matter of law."); *Kassem* 2003 WL 21382906, at *4 ("The USDA's sanction was not arbitrary and capricious because the USDA was simply following the applicable regulations in imposing permanent disqualification.") (citing *Willy's Grocery*, 656 F.2d at 26). Accordingly, the government is entitled to summary judgment. [3]

---

[2] Plaintiffs will be eligible to reapply for SNAP participation three years from the effective date of the denial. *See* 7 C.F.R. § 278.1(k)(3)(iii). In their response to the government's motion, they have described measures that they could take to ensure that Mr. Galal is separated from El Safi's economic benefits (Dkt. No. 52 at 3).

[3] Plaintiffs initially raised two additional issues, neither of which merits extensive discussion. First, Plaintiffs have abandoned any untimely challenge to the disqualification of Mr. Galal and El Safi (Dkt. No. 52 at 4). Second, they contend that judicial review is authorized under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq., and they are entitled to relief under that statute. However, the APA is available for review of a final agency action only if there is no other available avenue of relief. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."). Because 7 U.S.C. § 2023(a)(13) entitles a retailer to

V. CONCLUSION

For the above-stated reasons, Defendant's motion for summary judgment (Dkt. No. 47) is granted. The clerk's office is directed to enter a final judgment in Defendant's favor and close the case on the court's docket.

It is so ordered.

Dated: June 26, 2018                         /s/ Katherine A. Robertson
                                             KATHERINE A. ROBERTSON
                                             UNITED STATES MAGISTRATE JUDGE

---

judicial review of a decision of the FNS, there is no need to resort to the APA. *See Alhalemi, Inc. v. Roberts United States*, 224 F. Supp. 3d 587, 592 (E.D. Mich. 2016) (rejecting plaintiff's claim that review of permanent disqualification from SNAP is available under the ADA); *Quick Korner Mkt. v. U.S. Dep't of Agric., Food & Nutrition Serv.,* 180 F. Supp. 3d 683, 694-95 (S.D. Cal. 2016) (plaintiff-retailer that was permanently disqualified from SNAP was barred from relying on the APA to obtain relief because the Food Stamp Act provided a review procedure to hear the type of challenge plaintiffs brought and that procedure allowed for the type of relief plaintiffs sought.). Moreover, because Plaintiffs fail to demonstrate that review under the APA, which dictates that a court's evaluation is limited to determining whether the agency's action was arbitrary and capricious or constituted an abuse of discretion, would produce a different result, the claim is inconsequential. *See* 5 U.S.C. § 706; *Irobe*, 890 F.3d at 376 (the district court's "de novo review is wider in scope than that available under the [APA].").